McKeon v Musallam (2022 NY Slip Op 06869)

McKeon v Musallam

2022 NY Slip Op 06869

Decided on December 01, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 01, 2022

Before: Manzanet-Daniels, J.P., Moulton, González, Rodriguez, Higgitt, JJ. 

Index No. 651116/21 Appeal No. 16778 Case No. 2021-03703 

[*1]Matthew J. McKeon, as Executor of the Estate of Robert B. McKeon et al., Plaintiffs-Appellants,
v
Ramzi Musallam et al., Defendants-Respondents.

Simpson Thacher & Bartlett LLP, New York (Joshua C. Polster of counsel), for appellants.
Kirkland & Ellis LLP, New York (Rachel M. Fritzler of counsel), for respondents.

Order, Supreme Court, New York County (Jennifer Schecter, J.), entered September 10, 2021, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7), unanimously reversed, on the law, without costs, the complaint reinstated, and the matter remanded for further proceedings consistent herein.
Following the death of Robert B. McKeon, the founder of Veritas, a private equity firm, his estate, plaintiffs herein, entered into an Omnibus Agreement dated December 20, 2012, with defendants. The agreement provided for the transition of management and control of Veritas from McKeon to defendant principals Musallam, Evans, and Polk, and to memorialize economic and other arrangements as among the estate and the principals. The Omnibus Agreement provides that the estate is entitled to "participate in the proceeds relating to a Capital Event . . . in an amount equal to . . . (ii) 10% of any Capital Event proceeds" (id., § 4[a]). The Omnibus Agreement requires the principals to obtain the estate's consent prior to permitting Veritas to engage in any action "that would materially adversely affect, subordinate or dilute the interests of the [e]state . . . in each case, as determined by the [e]state" (id., § 6).
In October 2020, defendants caused Veritas to enter into a transaction with Dyal Capital Partners and affiliates whereby Veritas sold equity interests representing 11.79% of the company to Dyal for $725 million, and in addition took a $200 million loan from Dyal. Defendants did not seek plaintiff's estate's consent to the transaction, nor did the estate consent to the transaction.
Plaintiffs allege that the $200 million debt materially adversely affects, subordinates and dilutes the estate's interests, that defendants withheld the benefits of the loan from plaintiff estate, and that defendants are withholding proceeds from the equity sale, in violation of the Omnibus Agreement. Plaintiffs allege that the $200 million loan "materially adversely affects, and subordinates" the estate's right to participate in Capital Event proceeds because the debt reduced the equity value of Veritas and therefore the amount payable by Dayal in order to obtain its 11.79% valuation—specifically, that the Dyal debt reduced the valuation of Veritas by $200 million. Plaintiffs allege that, under certain circumstances, Dyal is entitled to receive preferred equity interests in Veritas entitling it to a liquidation preference in the event of the winding up or liquidation of any "Company Entity," including those in which plaintiff estate has ongoing equity interests. Plaintiffs in addition allege that defendants are wrongfully withholding proceeds relating to the "Capital Event," including 10% of the proceeds of the loan and 10% of the $374 million to which the estate is contractually entitled on account of the sale of interests in Veritas Manager Holdings.
At this stage, plaintiffs have sufficiently alleged breaches of the Omnibus Agreement. Plaintiffs [*2]raise questions of fact concerning whether the estate's consent to the transaction was required under paragraph 4 and whether this "Capital Event" materially adversely affected their interests. The motion court's interpretation of "proceeds," in this context, was unduly constrained (see CitiMortgage, Inc. v Pantoja, 176 AD3d 655, 656 [1st Dept 2019]); the phrase "relating to" indicates that the proceeds do not have to be specifically "in exchange for" a sale of interests in the manager but instead must have some connection or relation to such a sale. The motion court's interpretation rendered the phrase "relating to" a nullity (see GEM Holdco, LLC v Changing World Tech. L.P., 127 AD3d 598 [1st Dept 2015]). Further, plaintiffs' complaint sufficiently alleges that defendants wrongfully withheld its full 10% portion of the $374 million resulting from the sale of equity interests. The motion court erroneously made factual findings determining that money withheld by defendants was "for corporate use," and erroneously found that defendants need not remit "funds that the manager receives for corporate use," a limitation that does not appear in the agreement. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 1, 2022